**John W. ISAACS, Appellant,**
**v.**
**F. A. HICKEY, Appellee.**
**No. 339.**

Supreme Court of Alaska.

April 25, 1964.

4. Naylor v. Naylor, 217 Md. 615, 143 A. 2d 604, 608 (1958); see also Godfrey v. Godfrey, 228 Or. 228, 364 P.2d 620, 622–623 (1961).

Francis J. Nosek, Jr., Anchorage, for appellant.

James K. Tallman, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

This is an appeal by John W. Isaacs, the defendant below, from a final judgment of the superior court for $7,017 plus interest and costs, the value of work performed. The facts giving rise to the judgment are as follows:

On March 31, 1958, Isaacs entered into two written agreements with Hickey, the plaintiff below. The first agreement was entitled a conditional sales contract. By its terms Isaacs agreed to sell to Hickey an Insley crane for the sum of $6,000, payable on or before April 1, 1960.

The second agreement was for work to be performed by Hickey for Isaacs. The work consisted of the digging of ditches and the laying of water and sewer pipe at Isaacs' trailer court. Certain explicit portions of the work were to be performed by Hickey in 1958, while the remainder of the work had no contractual completion date. The contract price for this work was $6,-000. The second contract also included the provision that

"In lieu of lawful money of the United States, the sum of money due the Contractor [Hickey] for services rendered to the Owner will be considered to be payment on a 1952 Insley Crawler-crane. * * *

"A duly signed receipt, denoting the sum due Contractor and crediting him with payment on aforementioned equipment will be issued by Owner [Isaacs]."

The trial court found that Hickey had entered into the performance of the work specified by the second contract and had completed all work, of the undisputed value of $2,540, required to be performed by him within the 1958 deadlines. In addition, the court found that Hickey had performed certain extra work in 1958, some of which he was required to perform by the terms of the second contract. The nature and value of this extra work was as follows: digging 1,000 feet of extra drainage ditch, $1,000; removing and building dams, $750; and hauling pipe onto the job, $225. The combined value of this extra work, namely, $1,975, when added to the $2,540 above mentioned equals $4,515, which amount the court found to be the total value of all the work performed by Hickey for Isaacs in 1958.

The trial court also found that in the year 1959, Hickey dug 1,682 feet of ditch at one dollar per foot, as called for under the second contract, and performed extra work consisting of backfilling, valued at $270, and extra excavating and standby work with the crane, valued at $550. Thus, in 1959 Hickey completed work valued at $2,502, with a total value for the two years' work of $7,017.

The total value of the work performed by Hickey was $1,017 more than called for in the second contract but consisted of only $4,222 worth of actual specified work. Isaacs gave Hickey a receipt as called for by the second contract for the sum of $2,-540.

In August of 1959, Hickey left the job as a result of the dispute as to the value of the extra work. On April 20, 1960, Isaacs repossessed the Insley crane. On April 28, 1960, twenty-eight days after the crane was to have been paid for under the conditional sales contract, Hickey's attorney sent Isaacs a letter offering $557.50 as settlement of the dispute. The offer was rejected, and Isaacs bought the crane at his own auction for the price of $950. Finally, on February 8, 1961, Hickey filed suit in the superior court, asking that the contracts be rescinded and that he be awarded $7,437.50 plus interest as the value of work performed.

Isaacs' main contention on this appeal appears to be that various findings of fact made by the trial court are clearly erroneous. His specifications of error do not set forth which particular findings should be so held. Nor has he convinced this court that the trial court's findings should be set aside as being "clearly erroneous" under the provisions of Civ.R. 52(a). Our sentiments in that respect are very similar to those expressed by the United States Court of Appeals for the Eighth Circuit in Nee v. Linwood Securities Co.,[1] wherein it was stated:

"That the trial court could have viewed the facts differently, or that we might perhaps have done so, if we had been the initial trier thereof, does not alone entitle us to reverse. Under Rule 52(a) and its interpretation in the United States Gypsum Co. case, there must exist a stronger basis for overthrowing a finding of fact than a mere difference in personal judgment. Such evidentiary weight and such convictional certainty must be present that the appellate court does not feel able to escape the view that the trial court has failed to make a sound survey of or to accord the proper effect to all of the cogent facts, giving due regard, of course, to the trial court's appraisal of witness credibility where that factor is involved. * * * Reviewing the case in its own setting and on its own record, as the parties are entitled to have done, an attempt on our part to overthrow the trial court's appraisal of the situation, on the evidence before us would we believe, be more one of difference in personal judgment with the trial court on the facts than of definite and firm conviction on the whole situation that the court was clearly wrong."[2]

In particular Isaacs contends that the trial court erred in finding that the two written contracts were interrelated. As is readily apparent from the statement of facts set forth at the commencement of this opinion, the second contract was by its very terms an executory contract of accord of the conditional sales contract. In addition, Isaacs admits in his brief by saying that only work performed pursuant to the second contract could be credited toward the purchase price of the first contract that the two contracts were interrelated.

The second factual contention of Isaacs is that the trial court's finding as to the wrongful repossession of the Insley crane was completely erroneous. However, there was sufficient evidence presented at the trial to show that Isaacs rather than Hickey was in breach of the second contract of executory accord. Not only had Isaacs failed to provide adequate receipts for work performed as required by the contract, but he had also failed to haul the necessary pipe. Thus, Isaacs was in breach of the contract of executory accord and could not rightfully repossess the Insley crane. The trial court's determination thereon was not clearly erroneous.

Isaacs' third factual contention is that the trial court erred in finding that the

1. 174 F.2d 434, 437 (8th Cir. 1949).

2. Id. at 437. See also George v. Willman, Opinion No. 134, 379 P.2d 103, 106 (Alaska 1962); Nordin v. Zimmer, 373 P.2d 738, 741–742 (Alaska 1962); Rogge v. Weaver, 368 P.2d 810, 813 (Alaska 1962); and compare Merrill v. Merrill, 368 P.2d 546, 548 (Alaska 1962).

extra work should be credited toward the purchase price of the Insley crane. He admits that Hickey is entitled to be paid for the extra work but claims it cannot be credited on the second contract. Sufficient evidence exists that the extra work was necessary for the performance of the specified work and that it was mutually agreed upon by the parties. Therefore, it was not clearly erroneous for the trial court to find that the extra performance could be credited on the purchase price of the crane under the second contract.

■ The fourth factual question presented by Isaacs is that the trial court's finding is clearly erroneous that he had no offsets to be subtracted from the extra work performed. We decline to consider this claim of error since Isaacs nowhere states what these offsets might be.

■ The last factual question presented by Isaacs is that the trial court erred in finding that a certain letter written by Hickey's attorney to Isaacs and offering to pay $557.50 to regain the crane which had been repossessed by Isaacs was a compromise offer and not an admission against interest. After hearing testimony and arguments of counsel concerning the letter and the purpose for which it was given, the court ruled that the offer made in the letter was merely an attempt by Hickey to settle what later became a law suit. We find no clear error on this point.

■ Isaacs also alleges in his specifications of error that the trial court erred in allowing parole evidence to vary the terms of the written contract. This court chooses not to consider this point as Isaacs does not specify what parole evidence was allowed in and nowhere argues the matter in his brief. Such being the case, the point is deemed abandoned.[3]

■ The last point to be considered is Hickey's contention that Isaacs may not challenge the insufficiency of the evidence on the appeal as he failed to object to the findings of fact, conclusions of law or judgment below. Although this contention might have merit in some jurisdictions it has no validity in Alaska; for Civ.R. 52(b) provides

> "When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the district court and [*sic*] objection to such findings or has made a motion to amend them or a motion for judgment."

The clear implication of this rule defeats Hickey's contention.[4] As Professor Moore states in his treatise

> "Although a few decisions are *contra*, the clear intent of the above provisions [Civ.R. 52] is that neither a request for findings, nor a motion under Rule 52(b) is a prerequisite to appellate review of the district court's findings of fact, conclusions of law, and judgment."[5]

The judgment of the superior court is affirmed.

3. DeArmond v. Alaska State Dev. Corp., Opinion No. 116, 376 P.2d 717, 725 (Alaska 1962); Parks v. Brown, 368 P. 2d 220 (Alaska 1962); Veal v. Newlin, Inc., 367 P.2d 155 (Alaska 1961).

4. Monaghan v. Hill, 140 F.2d 31, 33–34 (9th Cir. 1944).

5. 5 Moore, Federal Practice para. 52.11 [4] at 2689 (2d ed. 1951).