Frederick L. STAUBER and Edna I. Stauber, Appellants,

v.

Eddie M. GRANGER and Josephine Granger, Appellees.

No. 1420.

Supreme Court of Alaska.

March 22, 1972.

Richard F. Lytle, of Houston, Lytle & Short, Anchorage, for appellants.

George A. Dickson of Wanamaker, Dickson & Perry, Anchorage, for appellees.

Before BONEY, C. J., and RABINOWITZ, CONNOR and ERWIN, JJ.

## OPINION

BONEY, Chief Justice.

This is an appeal from a judgment enforcing a land use restriction against the appellants who constructed a six-plex apartment structure on a subdivision plat adjoining land owned by the appellees.

In 1954, C. A. Sherman purchased and subdivided a large tract of land in the Lake Spenard Area near Anchorage. The subdivision known as Aero Acres Subdivision, contained 101 lots. In October 1955, after having sold 19 of the 101 lots in the development, Sherman recorded a document entitled "Use Restrictions" which read in relevant part:

> No lot shall be used except for residential purposes. No building shall be erected, altered, placed, or permitted to remain on any lot other than one detached single or double family dwellings not to exceed two and one-half stories in height and a private garage for not more than two cars.

Subsequent to the recording of the restrictions, the appellants purchased Lots 10 and 11 of Block Two of the subdivision. Later they sold Lot 11 to the appellees by a warranty deed creating a tenancy by the entirety. In June 1969, subsequent to the sale of Lot 11, the appellants obtained and filed with the recorder's office signatures from a majority of the property owners of Block Two, hoping thereby to abrogate the two family dwelling restriction as to Block Two and to remove any legal obstacles to their proposed construction of an apartment building on the adjoining Lot 10. In September of the same year they obtained a borough land use permit and began construction immediately. They were served with a summons and complaint by the present appellees on October 30, 1969. Construction, however, continued and the building was completed before the date of trial.

The superior court judge found the restrictions valid and enforceable, and enjoined the appellants from using the property for any purpose other than a two family dwelling. The decision provided, however, that the injunction would be void if the appellants paid the appellees $4,000 damages and $2,175 attorneys fees.

On appeal, appellants have sought reversal on the ground that they had neither constructive nor actual notice of the use restrictions. We do not consider the question of actual notice, because we have concluded that under AS 34.15.260(a)(3),[1] recordation of the use restrictions provided appellants with constructive notice.[2]

As an alternative ground for reversal, appellants urge that the use restrictions were abrogated when the majority of the owners of Block Two agreed in writing to permit the construction of multi-family dwellings. Appellants' contention is grounded upon the abrogation clause of the "Use Restrictions" document which provides:

> These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of ten years from the date these covenants are recorded, after which time said covenants shall be automatically extended for successive periods of 10 years unless an instrument signed by a majority of the then owners of the lots has been recorded agreeing to change said covenants in whole or in part.

On the basis of the plain meaning of the clause, we have concluded that appellants' contention is without merit.

The Aero Subdivision contains 101 "lots" and includes numerous blocks. The agreement upon which appellants seek to rely is signed by seven persons owning six of the ten lots contained in Block Two.

The abrogation clause makes reference to "a majority of the then owners of the lots." No reference is made to the owners' or a majority of the owners of individual blocks. By its clear and unambiguous meaning, the clause refers to a majority of the owners of all the restricted "lots" in the subdivision. A contrary conclusion, allowing a block by block determination, would do violence to reason as well as the plain ordinary meaning of the language used. It is self-evident that the seven persons signing the document upon which appellants seek to rely do not constitute a majority of the owners of the "lots" in the subdivision plat to which the restrictions refer. We hold that the attempted abrogation failed, because the appellants did not obtain, as was required, approval of a majority of the owners of the lots.

Having determined that appellants' arguments in support of reversal are without merit, we must consider a challenge to the judgment entered below. In his Memorandum Decision, the trial judge concluded that the plaintiffs would not enjoy the surroundings for which they had bargained, that they were deprived the privacy and quiet enjoyment which they would have had if the building next door were only a duplex, and that they have incurred substantial legal expenses to protect their rights. Presuming that the restrictions would probably terminate in 1975, and finding $1,000 per year as the value of the deprivation, the judge concluded damages at $4,000. In the final judgment, plaintiffs' attorneys fees were assessed at $2,175.

1. AS 34.15.260(a)(3) provides in regard to a recorded conveyance that,
   from the time it is filed with the recorder for record, it is constructive notice of the contents of the conveyance to subsequent purchasers and mortgagees of the same property or any part of it.

2. Appellants would urge us to reach a contrary conclusion on the basis of a contention not raised at trial. They argue that the recorded document containing the use restrictions was defectively acknowledged and thus not sufficient to impart constructive notice. We decline to reach this contention, since as the court has repeatedly held, issues not raised at trial will not be considered on appeal. Rasco v. Moran, 475 P.2d 696, 698 (Alaska 1970); State v. 7.536 Acres, 431 P.2d 897, 900 (Alaska 1967); Watts v. Seward School Board, 423 P.2d 678 (Alaska 1967); Sanuita v. Common Laborer's, etc., Local 341, 402 P.2d 199, 201 (Alaska 1965); Pollastrine v. Severance, 375 P.2d 528, 531 (Alaska 1962).

The appellants contend on appeal that they have been assessed attorneys fees twice because the judge in his Memorandum Decision mentioned the legal costs of the suit in his discussion of damages, and then also granted legal fees in the final judgment. It is true that the judge mentioned attorneys fees in his Memorandum Decision, but his final assessment of damages was expressly based on a yearly loss of enjoyment. The lower court's assessment of damages which was based upon a yearly loss of enjoyment was not so "clearly erroneous"[3] or "manifestly unjust"[4] as to warrant reversal by this court.

As a final contention on appeal, appellants assert that the court's award of attorneys fees was excessive. In making this contention appellants rely upon the fee schedule contained in Civil Rule 82(a) (1) which is applicable where the remedy sought is a money judgment. That section is not, however, pertinent to the present action where the remedy sought was equitable relief in the nature of an injunction, and the money portion of the judgment was simply an alternative remedy. Here, the alternative money judgment is not an "accurate criteria" for fixing fees; in such circumstances the provisions of Civil Rule 82(a) (2) apply. That section provides:

> In actions where the money judgment is not an accurate criteria for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with the amount and value of legal services rendered.

The judge, in his Memorandum Decision, specifically found that the appellees had been put to "substantial legal expense" in asserting their position. In view of this, we cannot say that the judge erred in establishing the attorneys fees he awarded.

The judgment is affirmed.

---

3. Hamilton v. Lotto, 397 P.2d 980, 982 (Alaska 1965).

4. Beaulieu v. Elliott, 434 P.2d 665, 676 (Alaska 1967).